93 P.3d 880 (2004)
CHEVRON U.S.A. INC., Appellant,
v.
CENTRAL PUGET SOUND GROWTH MANAGEMENT HEARINGS BOARD, an agency of the State of Washington; Town of Woodway, a municipal corporation of the State of Washington; and Snohomish County, a municipal corporation of the State of Washington; Respondents, and
City of Shoreline, a municipal corporation of the State of Washington, Respondent.
Snohomish County, Respondent,
v.
City of Shoreline, a municipal corporation of the State of Washington, Appellant,
Chevron U.S.A., Inc.; Central Puget Sound Growth Management Hearings Board, an agency of the State of Washington, Respondents, and
Town of Woodway, Respondent.
Nos. 52196-9-I, 52367-8-I.
Court of Appeals of Washington, Division 1.
June 1, 2004.
Publication Ordered July 2, 2004.
Andrew Sallas Lane, Snohomish County Atty. Office, Everett, for respondent County of Snohomish.
Scott Michael Missall, Thane D. Somerville, Seattle, for respondent Town of Woodway.
*881 Peter J. Eglick, Connie K. Haslam, Michael P. Witek, Seattle, for appellant Chevron.
Ian Richard Sievers, Samuel Wilmore Plauche, City of Shoreline Atty., Shoreline, for respondent City of Shoreline.
Martha Patricia Lantz, Office of the Atty. Gen., Olympia, for respondent Central Puget Sound.
GROSSE, J.
RCW 36.70A.100 requires that a city's comprehensive plan be "coordinated with, and consistent with," those of adjacent cities. Here, the Central Puget Sound Growth Management Hearings Board (the Board) found that the Town of Woodway's comprehensive plan was inconsistent with the City of Shoreline's because each plan designated the same area of unincorporated land as a "potential annexation area." However, we can discern no reason in law or logic to conclude that Woodway's plan was inconsistent with Shoreline's simply because it designated the same area. We therefore reverse the Board's final decision and order, and remand for further proceedings.

FACTS

1. Point Wells annexation plans
Point Wells is the last unincorporated area of land between the City of Shoreline in King County, and the Town of Woodway in Snohomish County. Chevron U.S.A., Inc., owns Point Wells. In 1998, Shoreline adopted a comprehensive plan under RCW 35.70A.040 that designated Point Wells as a potential annexation area, or "PAA." A King County countywide planning policy (CPP) holds that potential annexation areas "shall not overlap," and that each PAA "shall be specific to each city."[1]
In 2001, Woodway amended its comprehensive plan by adopting a Land Use Goal and five attendant Land Use Policies concerning Point Wells. One of these policies, Land Use Policy 19 (LUP-19), states:
Point Wells is a potential annexation area (PAA) for the Town of Woodway. Establish land use control, development plan review and impact mitigation in the PAA through an interlocal agreement with Snohomish County.
This was not the first time Woodway had expressed its intent toward Point Wells; both a 1993 Town Council resolution and an executive summary of Woodway's 1994 comprehensive plan amendments expressed Woodway's interest in someday annexing the area.
Shoreline responded to Woodway's 2001 comprehensive plan amendments by petitioning the Board to review the validity of LUP-19. Shoreline argued that LUP-19 violated the mandate of RCW 36.70A.100[2] that comprehensive plans be consistent with those of adjacent cities. Specifically, Shoreline asserted that it was inconsistent for the comprehensive plans of two adjacent cities to each designate the same area for potential annexation.
Woodway admitted to the Board that the plans were inconsistent, but it argued that Shoreline created the inconsistency by adopting its comprehensive plan when it knew that Woodway had a longstanding interest in Point Wells. Snohomish County intervened in the proceedings and argued that the two plans were not inconsistent under RCW 36.70A.100 because neither plan "thwarted" the other.
The Board rejected Snohomish County's argument, and concluded that Woodway and Shoreline designated Point Wells "with the same comprehensive plan policy designation (i.e., Potential Annexation Area)," and that Woodway's policy, LUP-19, "created the inconsistency with Shoreline's prior PAA designation." The Board characterized the two plans not as a benign overlap, but as an "explicit conflict," and stated, "It is difficult to imagine a more direct inconsistency between *882 the plans of two adjacent cities." Finally, the Board concluded that the most logical and equitable construction of RCW 36.70A.100 required Woodway to remove the inconsistency that it had created. Thus, the Board ordered Woodway to repeal or revise LUP-19.
Woodway joined in Snohomish County's appeal of the Board's decision to the Snohomish County Superior Court, which ruled in favor of Woodway and Snohomish County and remanded the matter to the Board for further proceedings. Shoreline then appealed to this court.

2. Notice of Woodway's proposed plan amendments
Woodway published notices in the Everett Herald of a November 1, 2000 Planning Commission hearing and a February 26, 2001 Town Council hearing related to Woodway's proposed 2001 comprehensive plan amendments. But Woodway did not mail these notices to Chevron, nor did it post any notices at Point Wells. Consequently, Chevron intervened in Shoreline's petition to the Board concerning Woodway's amendments, claiming that Woodway failed to provide for adequate public participation regarding the amendments. The Board declined to resolve Chevron's notice issue in light of its decision and order that Woodway repeal or revise LUP-19.
While Woodway and Snohomish County appealed the Board's decision to Snohomish County Superior Court, Chevron petitioned King County Superior Court to review the Board's decision not to resolve the notice issue. King County Superior Court, however, denied Chevron's petition after concluding that the Board's decision did not give rise to an appealable issue. Chevron subsequently filed this appeal, which we consolidated with Shoreline's.

DISCUSSION

1. Shoreline's appeal
Shoreline contends that the Snohomish County Superior Court erred when it reversed the Board's decision regarding Woodway's plan amendments. RCW 34.05.570(3) governs our review of this appeal.[3]
The Board's findings of fact, which recount several actions by the parties and reproduce portions of material documents, all pertain to matters of public record and are clearly supported by substantial evidence. But these findings do not support the Board's conclusions that LUP-19 violated RCW 36.70A.100 and that Woodway's adoption of LUP-19 was clearly erroneous.
RCW 36.70A.100 requires that Woodway's comprehensive plan be "coordinated with, and consistent with," Shoreline's. The Board has defined consistency to mean that "provisions are compatible with each other  that they fit together properly. In other words, one provision may not thwart another."[4] Applying the Board's interpretation of consistency to the question here  consistency between two documents  we find no reason to conclude that LUP-19 thwarts or is inconsistent with Shoreline's designation of Point Wells as a PAA.
The Board's analysis does not clearly state why LUP-19 is inconsistent with Shoreline's PAA designation, but we can infer two likely reasons  first, the Board might have reasoned that LUP-19 impermissibly gave the *883 same PAA designation to Point Wells that Shoreline did; second, the Board might have reasoned that, because two municipalities cannot actually annex the same area of land, LUP-19 impermissibly identified Point Wells as a potential annexation area because Shoreline had already done so. But neither of these grounds is sufficient to support the Board's conclusion.
As Snohomish County notes, King County's CPP LU-31 defines the term "potential annexation area" and associates certain consequences with its use in King County. Most notably, LU-31 mandates that "[p]otential annexation areas shall not overlap." But King County policies have no application in Snohomish County, and thus Woodway's adoption of LUP-19 could not have violated LU-31, as a matter of law. Furthermore, "potential annexation area" is not a defined term in the Growth Management Act (GMA), nor is it a defined term in Snohomish County. Thus, while Shoreline used the term "PAA" consistent with King County policies, Woodway used the phrase "potential annexation area" consistent only with its common, ordinary meaning; that is, an area of land that Woodway might annex.
Likewise, there is no logical reason to conclude that two municipalities may not identify the same area of land for potential annexation simply because one or the other has already done so. In other words, there is no reason in logic why land that could potentially be annexed by Shoreline could not also be potentially annexed by Woodway.
After reviewing the record and considering all of Shoreline's arguments to the Board, we fail to see how Woodway's policy thwarted Shoreline's PAA designation, and thus we fail to see how Woodway's policy was clearly erroneous under RCW 36.70A.100.

2. Chevron's appeal
Chevron appeals from the King County Superior Court's order, which denied review of the Board's failure to resolve whether Woodway gave adequate notice of its proposed 2001 plan amendments. We accept review of Chevron's petition in the manner of a protective cross-appeal.[5] Just as in our review of Shoreline's appeal, we sit in the same position as the superior court, and directly review the record before the Board.[6] We will grant the relief Chevron seeks only if we determine that the notice issue required resolution by the Board,[7] and that Chevron was substantially prejudiced by the failure to resolve the issue.[8]
We assume without deciding that the Board should have resolved the notice issue. We deny Chevron the relief it seeks, however, because Chevron suffered no prejudice as a result of the Board's action. Woodway gave adequate notice of its proposed plan amendments under RCW 36.70A.035 and RCW 36.70A.140, and due process did not require Woodway to give Chevron individualized notice.
RCW 36.70A.140 requires local governments to provide for "early and continuous public participation in the development and amendment of comprehensive land use plans." RCW 36.70A.035(1) requires that notice of actions under the GMA must be "reasonably calculated to provide notice to property owners and others affected," and it lists publication of notice in a newspaper of general circulation as an example of reasonable notice.[9] Neither of these provisions requires *884 individualized notice.[10] The notices of proposed plan amendments that Woodway published in the Everett Herald thus satisfied the GMA's notice requirements.
Although Chevron argues that due process required individualized notice because Woodway's action focused exclusively on Chevron's property, we fail to see how Woodway's action implicated Chevron's due process rights. Woodway's 2001 plan amendments simply established framework policies and a general direction for Woodway's future actions related to Point Wells; they did not constitute or bring about any action that infringed on Chevron's property rights.
For this reason, the case that Chevron principally relies on, Harris v. County of Riverside,[11] is distinguishable. In Harris, the court held that a property owner was entitled to individual notice of a hearing on the adoption of a comprehensive plan amendment because, as a result of the amendment process, the owner's land was redesignated for residential use.[12] This action caused the owner actual injuries, including deprivation of the commercial use of his property.[13] But here, unlike Harris, Woodway's adoption of the plan amendments caused Chevron to suffer no injury to its property rights that would have required individual notice of the proposed amendments. Moreover, we cannot escape the conclusion that the notice issue is entirely academic in light of the fact that, as the sole owner of Point Wells, Chevron can unilaterally prohibit Woodway's annexation of the property.
Chevron also argues that it was entitled to individualized notice of the proposed plan amendments because Woodway had provided such notice in the past regarding a subarea planning process. We disagree. Woodway's letter of July 5, 1999, which Chevron claims set a "notice standard" to which Woodway committed itself, specifically relates to the subarea planning policy for Point Wells, and nothing else. Chevron's argument that Woodway obligated itself to provide individualized notice of all land use planning activities pertaining to Point Wells is not convincing. Moreover, we do not interpret Chevron's letter of August 25, 1999, as a request for individualized notice of anything but future meetings related to the subarea planning process. For these reasons, the cases that Chevron cites relating to the issue of promised and requested notice are inapposite.[14]
Finally, we decline to review Chevron's argument that Woodway failed to comply with its own notice procedure for plan amendments.[15] Not only was this issue not briefed in the record before the Board, it is not a matter subject to review by the Board because it pertains to a statutory requirement over which the Board has no jurisdiction.[16]
*885 We reverse the Board's final decision and order, and remand for further proceedings consistent with this opinion.
WE CONCUR: BECKER and BAKER, JJ.
NOTES
[1] King County CPP LU-31.
[2] "The comprehensive plan of each county or city that is adopted pursuant to RCW 36.70A.040 shall be coordinated with, and consistent with, the comprehensive plans adopted pursuant to RCW 36.70A.040 of other counties or cities with which the county or city has, in part, common borders or related regional issues." RCW 36.70A.100.
[3] "On further appeal to this court, we directly review the record before the Board, sitting in the same position as the superior court." City of Redmond v. Central Puget Sound Growth Mgmt. Hearings Bd., 116 Wash.App. 48, 54, 65 P.3d 337, review denied, 150 Wash.2d 1007, 77 P.3d 651 (2003). We review the Board's findings of fact for substantial evidence, while we review its conclusions of law de novo. Diehl v. Mason County, 94 Wash.App. 645, 652, 972 P.2d 543 (1999). Although we accord substantial weight to the Board's interpretation of the law if it has specialized expertise in dealing with such issues, we are not bound by the Board's interpretation of a statute. City of Redmond v. Central Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 46, 959 P.2d 1091 (1998).
[4] Lawrence Michael Invs., L.L.C. v. Town of Woodway, CPSGMHB No. 98-3-0012, Final Decision and Order (Jan. 8, 1999), at 23, quoting West Seattle Defense Fund v. City of Seattle, CPSGMHB No. 94-3-0016, Final Decision and Order (Apr. 4, 1995), at 27 (available at http:// www.gmhb.wa.gov/central/decisions/index.html).
[5] See King County v. Central Puget Sound Growth Mgmt. Hearings Bd., 138 Wash.2d 161, 178-79, 979 P.2d 374 (1999).
[6] See City of Redmond v. Central Puget Sound Growth Mgmt. Hearings Bd., 116 Wash.App. at 54, 65 P.3d 337.
[7] RCW 34.05.570(3)(f).
[8] RCW 34.05.570(1)(d).
[9] RCW 36.70A.035(1) provides:

"The public participation requirements of this chapter shall include notice procedures that are reasonably calculated to provide notice to property owners and other affected and interested individuals, tribes, government agencies, businesses, school districts, and organizations of proposed amendments to comprehensive plans and development regulation. Examples of reasonable notice provisions include:
"(a) Posting the property for site-specific proposals;
"(b) Publishing notice in a newspaper of general circulation in the county, city, or general area where the proposal is located or that will be affected by the proposal;
"(c) Notifying public or private groups with known interest in a certain proposal or in the type of proposal being considered;
"(d) Placing notices in appropriate regional, neighborhood, ethnic, or trade journals; and
"(e) Publishing notice in agency newsletters or sending notice to agency mailing lists, including general lists or lists for specific proposals or subject areas."
[10] Holbrook, Inc. v. Clark County, 112 Wash.App. 354, 359-63, 49 P.3d 142 (2002), review denied, 148 Wash.2d 1017, 64 P.3d 649 (2003) (neither RCW 36.70A.140 nor RCW 36.70A.035 require individual notice).
[11] Harris v. County of Riverside, 904 F.2d 497 (9th Cir.1990).
[12] Harris, 904 F.2d at 498-99, 502.
[13] Harris, 904 F.2d at 501.
[14] See Gifford v. Spokane County, 9 Wash.App. 109, 113, 510 P.2d 1166 (1973) (landowners received promise of notice related to issuance of certificate of occupancy); Prekeges v. King County, 98 Wash.App. 275, 283, 990 P.2d 405 (1999) (failure to request individual notice of decision). Although Chevron cites Pierce v. King County, 62 Wash.2d 324, 333, 382 P.2d 628 (1963) for the same rule as Gifford, that case did not involve an issue of promised or requested notice.
[15] See Woodway Municipal Code 15.04.050 (requiring notice to be posted on subject property).
[16] RCW 36.70A.280(1) provides:

"A growth management hearings board shall hear and determine only those petitions alleging either:
"(a) That a state agency, county, or city planning under this chapter is not in compliance with the requirements of this chapter, chapter 90.58 RCW as it relates to the adoption of shoreline master programs or amendments thereto, or chapter 43.21C RCW as it relates to plans, development regulations, or amendments, adopted under RCW 36.70A.040 or chapter 90.58 RCW; or
"(b) That the twenty-year growth management planning population projections adopted by the office of financial management pursuant to RCW 43.62.035 should be adjusted."